| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

UNITED STATES OF AMERICA,

                **v.**

**BRIAN LIZ,**

                **Defendant.**

3:23-cr-00006-RAM-EAH

TO:    **Meredith Jean Edwards, Esq., AUSA**
        **Dale Lionel Smith, Esq.**

## ORDER

THIS MATTER comes before the Court on the Motion to Reopen Detention Hearing pursuant to 18 U.S.C. § 3142(f)(2)(B) and for Release on Conditions, filed by Defendant Brian Liz. Dkt. No. 22. In this motion, Liz argues that, based on new information that came to light following the initial detention hearing on December 22, 2022, his detention hearing should be reopened. *Id.* The Government opposed the motion. Dkt. No. 25. Liz did not file a reply. For the reasons that follow, the Court will deny the motion.

## BACKGROUND

In November 2022, the Government filed a Complaint against Liz, charging him with violations of: (1) 18 U.S.C. § 922(g)(1), felon in possession of a firearm; (2) 14 V.I.C. § 2253(a), unlawful possession of a firearm; (3) 14 V.I.C. § 2256(a)(3) unlawful possession of ammunition; and (4) 14 V.I.C. § 2253(b), possession of a machine gun. Dkt. No. 1. In the affidavit accompanying the Complaint, an FBI special agent averred that, on October 19, 2022, Virgin Islands Police Department ("VIPD") Officers were conducting surveillance of the Gasworks Gas Station & Convenience Store on St. Thomas, having been informed by a reliable

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 2

confidential source that Liz would be unlawfully possessing firearms. Dkt. No. 1-1. The source described what Liz looked like, what he would be wearing and the vehicle he was driving and stated that Liz had a machine gun on the driver's side floor of his car and a handgun in the glove compartment. *Id.*

Liz arrived at Gasworks and went into the store; the officers approached the vehicle and Liz started walking to the car; the officers ordered him to get on the ground and put his hands behind his back. Liz refused to comply and attempted to run to the driver's side of the car. The officers blocked his path and told him to back away from the car; Liz refused to comply and eventually the officers tased Liz to gain compliance. *Id.* Looking in the window of the car, the officers saw a black rifle on the driver's side floor of the car. Liz stated he did not have a firearms license. The inventory search revealed a loaded machine gun with a 50-drum magazine (a ghost gun), and a Glock with an extended 9-millimeter magazine loaded with 24 cartridges and another magazine loaded with 14 cartridges in the glove compartment. *Id.* The officers collected $27,745 in cash and checks from inside Liz's vehicle. The machine gun and Glock were functional. *Id.*

In December 2022, the Government moved to detain Liz under 18 U.S.C. § 3142(f)(1)(E). Dkt. No. 8. It argued that Liz was found with a long gun with a 50-round drum magazine, fully loaded with .223 ammunition within reach of the driver's seat. *Id.* at 2. The danger to the community posed by this deadly weapon favored detention. Liz also possessed a fully loaded Glock 9 mm firearm with an extended magazine and an additional magazine. The Government posited that Liz was out to kill someone or was prepared to use deadly force

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 3

to prevent someone from killing him—either way, he posed a danger to the community. *Id*.

Further, the strength of the evidence favored detention as the rifle on the floorboard

rendered any claim disavowing knowledge of the firearm incredible. *Id*.

The Government contended that Liz's life and characteristics favored detention, as he

has struggled with anger issues and complying with the law. In 2013, he was charged with

attempted first-degree murder after shooting someone. *Id.* While those charges were

pending, he was charged with introducing contraband in jail. The attempted murder charge

was resolved with a conviction on a lesser charge, third-degree assault, and Liz was

sentenced to serve three years. *Id.* at 2-3. Moreover, Liz has no respect for the law or law

enforcement, as prior to the October 2022 incident, VIPD officers approached Liz because of

the heavy tint of his car windows; he became confrontational, pushed one of the officers, and

fled. *Id*. at 3. In the instant incident, Liz also ignored commands from the officers, causing

enough concern that they tased him. *Id.* Further, while on release from Superior Court on

charges related to the instant federal charges, officers conducted a two-week surveillance of

the residence where Liz was supposed to reside and did not see his car there once. *Id.*

At the December 22, 2022 detention hearing,[1] the Government submitted numerous

documents to support its detention motion. Dkt. No. 25-1 at 13-15. It did not consider that

Liz presented a significant risk of flight but focused on the danger to the community prong

---

[1] Liz opted to have his initial appearance, preliminary hearing, and detention hearing on the
same day before Magistrate Judge Ruth Miller. Dkt. No. 25-1 at 6, 7. The Court found probable
cause for each of the charges. *Id.* at 13.

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 4

of the detention analysis. *Id.* at 16. The Government pointed out that his rap sheet showed

that in 2013 he was convicted of third-degree assault in Superior Court, although he had

been charged with attempted murder, and while he was in jail, he was charged with

introduction of contraband in 2014, although that charge was dismissed without prejudice.

*Id.* at 16, 18. Then the instant case—where he was arrested locally but was now being

charged federally for the firearms in his car—presented a danger to the community,

particularly given the fact that one of the firearms was a machine gun which could release

12 shots at a time, for which a person could not have a license in the Virgin Islands, found on

the floor of the driver's side, and the handgun in the glove compartment, both within arm's

reach. *Id.* at 17. The Government noted that the police found out about these guns through

an informant, indicating that others were aware that Liz possessed weapons in his vehicle.

*Id.* at 18. The Government acknowledged that Liz had been placed on bail in Superior Court,

but this was a separate proceeding and, given the level of dangerousness shown, it argued

that there were no conditions that could be set for release and asked that Liz be detained. *Id.*

Defense counsel (appearing on behalf of Attorney Smith) opted to proceed from the

initial appearance and preliminary hearing directly into the detention hearing, *id.* at 6,

waived the opportunity to present evidence and proceeded to argument, *id.* at 15-16.

Counsel questioned why the Government did not produce evidence, such that questions

surrounding whether Liz was the driver of the vehicle, and the identity of the person who

called the wrecker to tow Liz's car to the police station, all went to the issue of the weakness

of the Government's case, which would be "flushed out at some later date." *Id.* at 19-21.

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 5

Counsel noted the 2013 conviction and the 2014 dismissed charge, but emphasized that once Liz was out of jail, he became a businessman, with a towing and car rental business. *Id.* at 22. He turned himself in upon learning a warrant had been out for him on the instant charge. *Id.*

Counsel further argued that the Government had not shown Liz was a danger to the community: the Government did not prove that Liz was in the car or drove the car to the gas station (although "that is for a different proceeding"). *Id.* at 23-24. Counsel suggested the following conditions of release: not to possess any firearms, being restricted to going to and from his business (6:00 a.m. to 8:00 p.m.), and a modest bond. *Id.* at 25. Regarding counsel's suggestion that Liz's mother could be a third-party custodian, the Court stated that counsel had forgone the opportunity to put on evidence but now he was presenting argument. *Id.*

The Government responded that most of defense counsel's arguments were appropriate for a suppression hearing or trial, as counsel made many statements that were not supported by testimony. *Id.* at 26, 27. Further, the surveillance footage showed Liz coming out of the driver's side of the vehicle, going to the pump area of the gas station and coming back. *Id.* at 26. The main issue was the gravity of the weapon found in the vehicle and nothing defense counsel said erased that fact. *Id.*

In ruling that it would grant the Government's detention motion, the Court stated that this was not a presumption case and it just needed to consider the 18 U.S.C. § 3142(g) factors. *Id.* at 28. The weight of the evidence was very strong, and the nature and circumstances of the offense were very troubling to the Court. Not only did the Defendant—a conceded felon where the prior felony was a violent felony—possess two firearms and ammunition, but one

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 6

of those firearms was of a "devastating nature." *Id.* As to the history and circumstances of the defendant, he was a businessman; on the other hand, he had a significant criminal history of violence and use of weapons, and nothing was presented to counter that evidence. *Id.* Although defense counsel suggested that, in fashioning conditions of release, Liz be ordered not to possess firearms, he was already subject to that condition as he had no license, but firearms were found in his vehicle. The Court concluded that there were no conditions that it could fashion to assure the safety of the community, and ordered Liz detained. *Id.* at 29; *see also* Dkt. No. 14. Liz did not appeal the detention order.

On January 20, 2023, the Government filed an Information charging Liz with: felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2); illegal possession of a machinegun, 18 U.S.C. §§ 922(o), 924(a)(2); unauthorized possession of a firearm by a felon, 14 .V.I.C. § 2253(a); unauthorized possession of a machine gun by a felon, 14 V.I.C. §§ 2253(b) and (d)(2); and unauthorized possession of ammunition, 14 V.I.C. § 2256(a). Dkt. No. 16.

On February 27, 2023, Liz filed a motion to reopen his detention hearing and for release on conditions, based on (1) new "information" that had a material bearing on whether Liz should be released conditions before trial; (2) the evidence proffered at the December 2022 hearing did not warrant his detention; and (3) the Government failed to demonstrate by clear and convincing evidence that there were no conditions of release that would reasonably assure the safety of the community. Dkt. No. 22. Liz stated that the Pretrial Services Report—an indispensable component of the release or detention determination— was not available at his initial detention hearing and contained "new information"

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 7

concerning whether he should be released on conditions. *Id.* at 2. He asserted that a suitable individual—the landlord of Liz's business—had agreed to act as a third-party custodian, post a secured bond, and would ensure that he complied with conditions of release. *Id.* Liz agrees to electronic monitoring and a reasonable curfew so he could run his business; and the Government's "unspecified danger posed by his release will be eliminated." *Id.* at 2, 3.

Liz next argued that the claim that he represented a danger to the community was based on a "demonstrably false and intentionally misleading Probable Cause Fact Sheet," since the Police Body Worn Camera recordings disclosed during discovery showed that the Fact Sheet, and the affidavit attached to the federal court complaint based on the Fact Sheet, advanced a "materially false narrative" suggesting Liz was a danger to the community. *Id.* at 3. One video showed that Liz made no attempt to run to the driver's side of the car to open it, with the implication that he was seeking firearms to kill the police officers. *Id.* Eyewitness interviews also confirmed that Liz made no attempt to run to the car, and the defense will proffer the videos at the reopened hearing to show that Liz merely attempted to walk away from his truck to the convenience store when an armed officer blocked his path; Liz then walked away and was blocked by another officer, he was then tased and handcuffed. *Id.*

Liz further contended that the Fact Sheet and affidavit were also materially false in presenting the confidential informant as credible. *Id.* at 4. He asserted that "[i]t appear[ed] that the government now concedes" who the informant was. The informant, who was shot and killed on February 3, 2023, was an "inveterate liar with a history of providing . . . false information, and set up Liz by planting the weapons in his vehicle to frame him. *Id.* Several

witnesses could testify that Liz did not knowingly possess the firearms or ammunition recovered from his vehicle; he would call three police officers at the reopened hearing. *Id.*

On February 27, 2023, Magistrate Judge Miller recused herself from this case. Dkt. No. 23. On March 1, 2023, this Court issued an order setting a briefing schedule on Defendant's Motion to Reopen. Dkt. No. 24. The Order provided that the Government shall file a response by March 8, 2023, and the Defendant may file a reply by March 10, 2023. *Id.*

The Government opposed the motion to reopen and for release on conditions, arguing that none of the information Liz set forth constituted new information that had a material bearing on release, and the latter two grounds Liz offered (the evidence did not warrant detention and the Government's failure to demonstrate he posed a danger to the community) were not properly raised in a motion to reopen but should have been raised in a motion for review of a detention order. Dkt. No. 25. As to the new information argument concerning (1) a pretrial services report—which had not been prepared at the time of the initial detention hearing—that reflected a suitable third-party custodian; (2) police body camera recordings showing the probable cause fact sheet was false in that Liz never tried to run towards his vehicle; and (3) information attacking the credibility of the person Liz believed to be the informant in this case, none of those grounds qualified as new information that had a material bearing on whether any conditions of release could reasonably assure the safety of the community. *Id* at 6. The first item was an improper attempt to take "a second bite of the proverbial apple" because Liz could have and should have sought a continuance of the detention hearing until the pretrial services report could be fashioned, but he elected to

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 9

proceed immediately. *Id*. Liz could have put forth a third-party custodian at the hearing but chose to rely solely on argument. Having had the opportunity to secure a pretrial services report and third-party custodian to present at the original hearing, neither ground provided a basis to reopen. *Id*.

As to the camera footage allegedly showing that Liz was not walking to his vehicle, such information was not "material" to the issue of release. *Id.* at 7. No argument was made at the original detention hearing that Liz was running towards his truck in order arm himself to kill the police, and the magistrate judge did not cite any facts showing that she relied on such an inference in finding that no conditions would reasonably assure the Court that Liz would not arm himself if released and be a danger to the community. *Id*. And by walking anywhere, Liz disobeyed the officers' orders to get on the ground. Thus, to the extent Liz relied on the video to undercut the lawfulness of his arrest, such an attempt failed. Liz's arguments concerning the informant, geared to undercut the weight of the evidence, were premature, as they should be raised in a motion to suppress. If the weight of the evidence was, in fact, materially altered based on a suppression ruling, Liz could seek to reopen the detention hearing at that time. *Id.*

Finally, Liz's arguments that the evidence proffered at the original hearing did not warrant his detention and the Government failed to demonstrate that he posed a danger to the community such that no conditions could assure the safety of the community, did not constitute new information material to the issue of detention. Rather, such arguments would be properly raised in a motion for review of a detention order. *Id*. at 8.

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 10

Liz did not file a reply by the deadline provided in the March 1, 2023 order.[2] Dkt. No.

24.

## DISCUSSION

A detention hearing

> may be reopened, before or after a determination by the judicial officer, at any time
> before trial if the judicial officer finds that information exists that was not known to the
> movant at the time of the hearing and that has a material bearing on the issue whether
> there are conditions of release that will reasonably assure the appearance of such
> person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). "Courts have interpreted this provision strictly, holding that hearings

should NOT be reopened if the evidence was available at the time of the hearing." *United

States v. Merola*, 2008 WL 4449624, at *2 (D.N.J. Sept. 30, 2008). Whether to reopen a hearing

is determined at the court's discretion. *United States v. Harry*, 2020 WL 1933990, at *3 (D.N.J.

Apr. 22, 2020) (citing cases).

As Magistrate Judge Miller noted at the December 2022 detention hearing, this was

not a presumption case under 18 U.S.C § 3142(e)(3) where the Defendant was required to

provide some evidence to rebut the presumption that he should be detained. Rather, the

Magistrate Judge straightforwardly applied the factors under § 3142(g) in determining there

---

[2] At the March 15, 2023 calendar call in this case, Defendant's attorney requested that he be
allowed to file the reply out of time in order to address the alleged "deficiencies" of the
Magistrate Judge's detention decision in more detail, and to address the Government's
opposition regarding the reopening of a detention hearing versus the appeal of a detention
order. The Court did not address this request.

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 11

were no conditions that would assure the safety of any other person and the community. The risk of flight factor was not at issue. Dkt. No. 25-1 at 16.

For the most part, Liz's motion to reopen seeks to poke holes in the Government's case. The allegedly new information that Liz relies on is neither new nor does it have a material bearing on the issue of whether any conditions of release would assure the safety of the community. He contends that the Pretrial Services Report was not available at the detention hearing, but it contained "new information" concerning whether he should be released on conditions, including, apparently, the name of a new third-party custodian.[3] Dkt. No. 22 at 2. If, as Liz argues, the Pretrial Services Report was "an indispensable component of the release or detention determination," *id.,* Liz had the option to wait for the report to have been issued so it was available prior to his detention hearing. But he made the affirmative decision to proceed directly to the detention hearing, immediately after the initial appearance and the probable cause hearing, despite not having this "indispensable component." He cannot now argue that the Report contained new information to reopen the detention hearing, when he opted not to continue the hearing until he had it in hand. This conclusion is the stronger because even through his mother was present at the hearing, and could have possibly testified as a third-party custodian, counsel declined to present her testimony and only presented argument.

---

[3] Liz did not provide a copy of the Pretrial Services Report to the Court.

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 12

In addition, if the Pretrial Services Report contained the name of a new third-party custodian—the landlord of Liz's business—that person's existence was certainly known to him, and he could have ascertained his possible willingness to serve as a third-party custodian, prior to the detention hearing. The fact that his name was contained in the Report does not constitute new information. *See United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991) (affirming district court's ruling not to reopen detention hearing where Defendant submitted 18 affidavits from people he knew attesting that he would not be a danger to the community; district court did not consider those affidavits as constituting "information . . . not known to the movant at the time of the hearing" simply because the affidavits were not in existence at the time of the hearing, since defendant had ample time to obtain those affidavits prior to the hearing or arrange for the personal appearance of those individuals) (quoted approvingly in *United States v. Warren*, 2010 WL 1904772, at *3 (W.D. Pa. May 11, 2010) and *United States v. Merola*, 2008 WL 4449624, at *2 (D.N.J. Sept. 30, 2008)).

And even if the Court were to assume that the body camera footage produced to Liz during discovery showed that Liz did not run toward his car, that evidence would not have a material bearing on the issue of whether any conditions of release would ensure the safety of the community to warrant reopening the detention hearing. Presumably Liz offers that argument to show the weakness of the Government's case such that the weight of the evidence prong weighed against detaining him. But the Magistrate Judge did not rely on any evidence that Liz was allegedly running to his car with the possible intent of obtaining a firearm to shoot the police officers. Rather, the Magistrate Judge found the weight of the

*United States v. Liz*
3:23-cr-00006-RAM-EAH
Order
Page 13

evidence factor was very strong because not only did the Defendant possess two firearms and ammunition, but one of those firearms was of a "devastating nature"—a machine gun. Dkt. No. 25-1 at 27-28. Defense counsel conceded Liz was a felon, *id.* at 9, and the Magistrate Judge described Liz's prior offense as a "violent felony" involving shooting a person, *id.* at 28. *See United States v. Payne*, 2018 WL 3546231, at *7 (D.V.I. July 23, 2018) (ruling that "the weight of the evidence is strong. As a convicted felon, Defendant is not allowed to possess a firearm."). Thus, whether or not he was running to his car did not bear on the Magistrate Judge's determination.

In a similar vein, additional "new" information about the purported confidential informant does not have a material bearing on whether any conditions of release would ensure the safety of the community to warrant reopening. Whether the person Liz believed to be the informant[4] had no credibility does not counter the fact that whoever the informant was correctly told law enforcement that Liz had a machine gun in his car and another firearm in the glove compartment. What was at issue was the seriousness of the danger posed by Liz. There can be no doubt that possessing a loaded machine gun and ammunition, along with a loaded handgun and ammunition within arm's reach in a car, posed a substantial harm to the community, and the danger to the community is the likelihood that Liz, would, if released, illegally obtain firearms. "Strict conditions of release . . . cannot guarantee that [Liz] will no longer engage in criminal activity. [Liz's] "new" evidence has failed to assuage the Court's

---

[4] The Court cannot find anything in the record that would support Liz's statement that the Government "appeared to concede the identity of the informant". Dkt. No. 22 at 4.

concern about him imperilling the community. *United States v. McBride*, 2021 WL 51393, at

* 6 (W.D. Pa. Jan. 6, 2021). This argument (and any evidence to support it) is more

appropriate for a suppression hearing or trial.

   Finally, Liz's related arguments that the evidence offered at the detention hearing did

not support his detention, and the Government failed to demonstrate by clear and convincing

evidence that he posed a danger to the community, are issues that should have been brought

up in an appeal of the detention order, as they directly challenge the Magistrate Judge's

evaluation of the § 3142(g) factors. *See* 18 U.S.C. § 3145(b) (providing that a person who has

been ordered to be detained pending trial by a magistrate judge may move for revocation or

amendment of the order).

   Accordingly, for the reasons set forth above, it is now hereby **ORDERED** that the

Defendant's Motion to Reopen Detention Hearing, Dkt. No. 22, is **DENIED**.

                ENTER:


Dated: March 15, 2023      /s/ Emile A. Henderson III
               EMILE A. HENDERSON III
               U.S. MAGISTRATE JUDGE